IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Chad Crumbaker,<br><br>*On behalf of himself and those similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>Parking Solutions, Inc., Aaron Shocket, Robert Rees,<br><br>Defendants. | Case No. 2:15-cv-2446<br><br>Judge James Graham<br><br>Magistrate Judge Kimberly A. Jolson |

CLASS AND COLLECTIVE ACTION SETTLEMENT AGREEMENT

This Class and Collective Action Settlement Agreement (the "Agreement") is entered into by and between Plaintiff Chad Crumbaker, individually and on behalf of all similarly-situated individuals identified in Section 1(B) below ("Plaintiff"), and, on the other hand, Defendants Parking Solutions, Inc., Aaron Shocket, and Robert Rees (collectively "Defendants"). Defendants and Plaintiff will be collectively referred to as the "Parties."

The Parties agree as follows:

1. **Purpose and Background**

   A. On June 24, 2015, Plaintiff initiated the lawsuit *Crumbaker v. Parking Solutions, Inc.* (the "Lawsuit"), currently pending in the United States District Court, Southern District of Ohio (Eastern Division) (the "Court"), case number 2:15-cv-2446.

   B. The Parties seek to resolve all claims raised in the Lawsuit. For purposes of this Agreement, the Parties have agreed to the following two settlement classes to be bound by this Agreement and entitled to share in the settlement proceeds:

      (1) All hourly valet employees who worked for Parking Solutions, Inc. in Ohio at any time between June 24, 2012 to December 31, 2015 and who were subject to improper payroll deductions for uniforms or insurance in one or more workweeks. (This class will be referred to as "the Deduction Class.")

1

  (2) All hourly valet employees who worked for Parking Solutions, Inc. in Ohio at any time between June 24, 2012 to December 31, 2015 who worked at Hollywood Casino in Columbus, Hollywood Casino in Dayton, and/or the Sheraton in Columbus, and whose credit card tips were not timely distributed. (This class will be referred to as "the Tip Credit Class.")

 The members of the both classes will be collectively referred to as "Class Members." The time periods noted above will be referred to as the "Class Period." Class Members may be a member of either or both of the Tip Credit Class and Deduction Class.

C. The purpose of this Agreement is to conclusively and finally resolve all of Plaintiff's and Class Members' claims against Defendants that were raised as part of the Lawsuit and occurred during the Class Period. This Agreement covers all claims raised on behalf of a putative class in the Lawsuit. Plaintiff's individual claims raised in the Lawsuit are subject to a separate settlement agreement and release. Plaintiff's separate settlement agreement and release are not contingent on the Court's approval of this Agreement.

D. The Parties agree and understand that this Agreement is part of a global settlement, and that this Agreement is neither valid nor enforceable unless the Court enters a written Order approving this Agreement. If the Court does not finally approve this Agreement, then this Agreement is null and void.

2. **Opportunity to Negotiate, Consider, and Consult with Counsel**

A. The terms of this Agreement are the product of lengthy, arms-length negotiations between the Parties. The negotiations included a private mediation with Stephen Watring of Dunlevey, Mahan & Furry and extensive post-mediation negotiations and discussions.

B. The Parties agree that the consideration given to support the obligations under this Agreement is adequate and sufficient in all respects and that the Parties have not received or been made any promise, inducement, or concession not set forth in this Agreement in support of the obligations imposed.

C. The Parties acknowledge that they have been represented by counsel throughout the negotiation of this Agreement and the Lawsuit.

3. **Settlement and Disbursement**

A. The potential gross settlement value to Plaintiff and Class Members will not exceed $529,071.46 (the "Settlement"). The Settlement accounts for all payments and claims raised in the Lawsuit by Plaintiff and Class Members up to and including the end of the Class Period. The Settlement is the maximum amount of money that Defendants could be

required to pay to Plaintiff and Class Members even if 100% of Class Members make claims under this Agreement.

B. The Settlement will be apportioned among the claims and Class Members as follows:

### Deduction Claims

i. $450,071.46 will be allocated to the deduction claims alleged in this lawsuit (the "Deduction Settlement"). The deduction claims arise from Defendants' allegedly improper practice of deducting money from Deduction Class Members' paychecks for insurance and/or uniform costs.

ii. The Deduction Settlement is 275% of the sum of the lowest negative numbers calculated on a per-pay-period basis from Exhibit S (the spreadsheet used to calculate amounts due) in either of the following ways: (Gross Wages – Tips Reported – Tips Due – Uniform Amount – Insurance Amount) – (Tipped Minimum Wage × Hours worked) OR (Gross Wages – Uniform Amount – Insurance Amount) – (Minimum Wage × Hours Worked). Example: -7 is the lowest negative number of -3 and -7.

iii. Each Deduction Class Member entitled to a payment who timely and properly submits a Claim Form and Release as described below will be entitled to a share of the Deduction Settlement equal to 275% of the sum of all lowest negative numbers (described above) attributable to that Deduction Class Member.

iv. Each Deduction Class Member's share of the Deduction Settlement is 25% wages and 75% additional damages under Article II, Section 34a of the Ohio Constitution and the Fair Labor Standards Act.

v. The Deduction Settlement will be payable to all Deduction Class Members who worked at any time during the Class Period and submit a valid and properly executed Claim Form and Release described below, and who are entitled to a payment.

vi. The Deduction Settlement is intended to provide funds sufficient to cover all Deduction Class Members outlined above. To the extent that the Deduction Settlement is insufficient to cover the payouts described above, then all Deduction Class Members who submit valid claim forms will instead be entitled to a pro rata share of the Deduction Settlement based on the Deduction Class Members' entitlement to payments in 3(B)(iii).

### Tip Credit Claims

vii. $48,712 will be allocated to the tip credit claims alleged in this lawsuit (the "Tip Credit Settlement"). The tip credit claims arise from Defendants' allegedly

       improper practice of not timely distributing certain credit card tips at three locations.

  viii.    For each pay period during which Defendants retained any amount of credit card tip money, each affected Tip Credit Class Member will be entitled to Full Minimum Wage × Hours Worked – Wages Paid.

  ix.    Each Tip Credit Class Member's share of the Deduction Settlement is 25% wages and 75% additional damages under Article II, Section 34a of the Ohio Constitution and the Fair Labor Standards Act.

  x.    The Tip Credit Settlement will be payable to all Tip Credit Class Members who timely and properly submit a valid Claim Form and Release described below.

  xi.    The Tip Credit Settlement is intended to provide funds sufficient to cover all Tip Credit Class Members outlined above. To the extent that the Tip Credit Settlement is insufficient to cover the payouts described above, then all Tip Credit Class Members who submit valid claim forms, who are entitled to a payment, will instead be entitled to a pro rata share of the Tip Credit Settlement based on the Tip Credit Class Members' entitlement to payments in 3(B)(ix). All payments made to Tip Credit Class Members, following the timely and proper submission of a claim form, will be based on the amount class members are due, and no Tip Credit Class Member shall receive in excess of that amount. If the aggregate amount of claims submitted by the Tip Credit Class Members does not exceed the Tip Credit Settlement amount, then the difference shall revert to Defendants.

**Prompt Pay Act Claims**

  xii.    $26,288 will be allocated to the Prompt Pay Act claims alleged in this lawsuit (the "Prompt Pay Act Settlement"). The Prompt Pay Act claims stem from Defendants' allegedly improper practices of not timely distributing certain credit card tips at three locations and deducting money from Deduction Class Members' paychecks for insurance and/or uniform costs.

  xiii.    The Prompt Pay Act Settlement will be payable to all Class Members who worked at any time during the Class Period and timely and properly submit a valid Claim Form and Release described below.

  xiv.    Eligible Class Members will be entitled to $16.86. This is an amount equal to the Prompt Pay Act Settlement divided by the total number of Class Members with claim amounts (1,559), regardless of whether the Class Member makes a claim.

C.    Defendants will, from the Settlement, pay to Plaintiff Crumbaker $4,000 as a service and incentive award. This amount will come from the Settlement and will count toward the

4

maximum amount of the Settlement. The service award will be payable by a separate check and will be considered as Form 1099 income.

D. Class Counsel agrees to only seek, and Defendants agree not to object to, an attorneys fee award equal to 21% of the Settlement. This amount is $111,105.00. Defendants will pay any attorneys fee award separately from and in addition to the Settlement so that the amounts going to Class Members will not be reduced by any fee award.

E. This Agreement is not contingent on the Court approving the amount of attorneys' fees and costs noted above. In the event that the Court does not approve the above amount of attorneys' fees and costs or reduces that amount, the finding will not be a basis for rendering any unrelated section of the Agreement null, void, or unenforceable. Class Counsel retain their right to appeal any decision by the Court regarding the Attorneys' fees and costs and such appeal will not be deemed an appeal of this Agreement or the Settlement, provided that the total amount of sought does not exceed 21%. The merits and substance of the Settlement will be approved by the Court separately and independently of the Court's decisions regarding Class Counsel's application for attorneys' fees and costs.

F. In addition to the Settlement, Defendants agree to pay all necessary employer payroll taxes (e.g., FICA, FUTA, unemployment insurance) for wage payments made to Class Members in addition to the Settlement. Class Members will be responsible for their individual payroll taxes that are normally withheld from their wages. Those amounts will be withheld by Garden City Group ("GCG") and remitted to the proper taxing authorities. The Parties are responsible for ensuring their own proper tax treatment of the payments.

G. The Parties will engage GCG to administer the settlement, notice, and claims processes. In addition to the Settlement, Defendants agree to pay all expenses and fees arising from administering the settlement, notice, and claims process. The Parties will ensure that GCG follows the administrative procedure set forth in this Agreement.

H. Prior to disbursement under this Agreement, Defendants will forward to GCG funds sufficient to pay all settlement payments that are authorized under this Agreement when requested by GCG. GCG will send checks to each Class Member at the address listed on their Claim Form and Release unless the Class Member provides an updated or alternate address.

I. This is a claims-made settlement from a common fund for payment to those Class Members who submit a timely, valid claim and properly executed Claim Form and Release in accordance with the provisions of this Agreement. All funds allocated for a Class Member that are not validly and timely claimed with a properly executed Claim Form and Release will be retained by Defendants. Any amount of attorneys' fees, costs, and administrative fees not authorized by the Court will be retained by Defendants.

5

J.  To the extent that Defendants fail to make one or more payments as outlined above, Plaintiff and Class Members may notify Defendants of the failure. Defendants will then have 14 days to cure the failure. If Defendants do not cure the failure, Plaintiff and Class Members can request from the Court an entry of judgment against Defendants jointly and severally for the amount of the Settlement and approved attorneys' fees plus applicable interest. Further, Plaintiff and the Class Members will be entitled to recover attorneys' fees and costs associated with obtaining such a judgment and its enforcement.

4. **Release**

   A. All Deduction Class Members who do not exclude themselves from this Agreement in accordance with Section 5(c) below are bound by the following release:

   > Except for the obligations imposed by this Agreement, all Deduction Class Members who do not exclude themselves from this Agreement in accordance with Section 5(c) below release and discharge Defendants and Towne Holdings, Inc. and their insurers (including but not limited to Navigators Insurance Company and Navigators Pro), agents, servants, parents, subsidiaries, affiliates, divisions, members, trustees, partners, officers, directors, employees, attorneys, successors, predecessors, administrators, and employee benefit plans, and assigns (collectively "Released Parties"), both individually and in their business capacities, from any and all claims, demands, rights, liabilities, and causes of action, whether known or unknown, that were asserted in the Lawsuit regarding deductions.

   B. All Tip Credit Class Members who do not exclude themselves from this Agreement in accordance with Section 5(c) below are bound by the following release:

   > Except for the obligations imposed by this Agreement, all Tip Credit Class Members who do not exclude themselves from this Agreement in accordance with Section 5(c) below release and discharge Defendants and Towne Holdings, Inc. and their insurers (including but not limited to Navigators Insurance Company and Navigators Pro), agents, servants, parents, subsidiaries, affiliates, divisions, members, trustees, partners, officers, directors, employees, attorneys, successors, predecessors, administrators, and employee benefit plans, and assigns (collectively "Released Parties"), both individually and in their business capacities, from any and all claims, demands, rights, liabilities, and causes of action, whether known or unknown, that were asserted in the Lawsuit regarding credit card tips.

   C. All Class Members who wish to receive funds from the Settlement under this Agreement must properly execute the Claim Form and Release attached as Exhibit 1. Also, as part of

the Claim Form and Release, each Class Member submits to the jurisdiction of the United States District Court, Southern District of Ohio for purposes of this litigation and enforcement of this Agreement.

D. Failure of a Class Member to timely submit a fully executed Claim Form and Release in accordance with this Agreement will be deemed a waiver of the Class Member's right to participate in the Settlement. Fully executed includes obtaining a witness's signature or providing the Class Member's social security number.

5. **Administration of Settlement**

    A. GCG will mail the Claim Form and Release attached as Exhibit 1 to all Class Members, along with the Notice of Settlement attached as Exhibit 2.

    B. The Settlement contemplated by this Agreement will be administered in accordance with the deadlines established in this Agreement, and the following timetable, subject to the Court's approval:

    i. Within 14 days after the Court's preliminary approval of the Settlement, Defendants will provide Class Counsel and GCG with a final and consolidated list of all Class Members and their last known addresses and phone numbers.

    ii. Within 30 days after receiving the above list of Class Members, GCG will transmit by first-class U.S. Mail to each Class Member a Notice of Settlement, in the form attached as Exhibit 2, a Claim Form and Release, in the form attached as Exhibit 1, and a self-addressed, stamped envelope to return the Claim Form and Release.

    iii. If any mailing is returned to GCG with a forwarding address for any Class Member or if a Class Member notifies Class Counsel or GCG of an alternative address, GCG will transmit by first-class U.S. Mail a second mailing consisting of a Notice of Settlement, in the form attached as Exhibit 2, a Claim Form and Release, in the form attached as Exhibit 1, and a self-addressed, stamped envelope to return the Claim Form and Release. If any mailing is returned to GCG as undeliverable, then GCG will run the Class Member's name and address through the National Change of Address Database. If an updated address is obtained this way, then GCG will transmit by first-class U.S. Mail a second mailing consisting of a Notice of Settlement, in the form attached as Exhibit 2, a Claim Form and Release, in the form attached as Exhibit 1, and a self-addressed, stamped envelope to return the Claim Form and Release.

    iv. 60 days after the mailing date will be the deadline for postmarking or otherwise submitting the Claim Forms and Releases. This claim deadline will be strictly construed, provided, however, that Class Members who timely but imperfectly respond will be notified by GCG and given 14 additional days to respond.

"Imperfectly respond" means misspelling words or names, inputting incorrect or incomplete dates of employment, or putting information in the wrong blank or space. The deadline for submitting Claim Forms and Releases for any Class Member who receives a second mailing is the later of 30 days from the date that the second mailing is post-marked or 60 days after the original mailing date. The time between the mailing date and the claims deadline is the "Settlement Period." Claim forms must be mailed to GCG. GCG will not process an incomplete Claim Form. If GCG receives a Claim Form and Release that it believes to be non-compliant or incomplete and therefore subject to rejection, GCG will promptly send to the Class Member the letter attached as Exhibit 3, another Claim Form and Release, and self-addressed, stamped envelope.

    v.    Within 30 days after the conclusion of the Settlement Period, GCG will provide a report to Defendants and Class Counsel (a) identifying all Class Members who have submitted valid Claim Forms and Releases, (b) identifying the amount due to each Class Member who submitted valid Claim Forms and Releases, (c) identifying all Class Members whose mailings were returned as undeliverable and the results of any second mailings, (d) identifying all Class Members who opted-out. GCG will also provide a copy of the Claim Forms and Releases submitted by Class Members. Defendants and Class Counsel may request and GCG will provide an interim report of the above information at any time.

    vi.    The amounts due to Class Members are based on the spreadsheets referenced in Section 3. Those spreadsheets, or a version thereof, will be provided to GCG for settlement disbursement.

    vii.    Within 30 days after all appeal periods have run for the Court's final approval of this Agreement and the Settlement (except appeals concerning an attorney fees award not to exceed 21%), GCG will transmit payments to Class Members who submitted valid Claim Form and Releases.

    viii.    Within 30 days after all appeal periods have run and/or appeals resolved, Defendants will transmit payment to Class Counsel for the attorneys fees approved and awarded by the Court.

C. Class Members who wish to opt out from this Agreement and the Settlement must submit a Verification of Opt-Out Letter. The Letter must be timely and valid. To be timely, it must be received by the date indicated in the Notice, which will be 60 days from the date on which the Claim Forms were initially mailed. To be valid, the Verification of Opt-Out Letter must be signed and notarized and will contain the following statement or a similar statement:

> I wish to opt out of the settlement of the case, *Crumbaker v. Parking Solutions, Inc.* I understand that by requesting to opt out from the

8

settlement, I will receive no money from the settlement funds created in accordance with the settlement agreement in this case. I understand that if I opt out from the class monetary settlement, I may bring a separate action. I understand that in any separate lawsuit, I may receive nothing or less than I would have received had I filed a claim for money under the settlement agreement in this case.

D. A Class Member who submits a Verification of Opt–Out Letter is not eligible to recover a share of the Settlement. If a Class Member submits both a Claim Form and a Verification of Opt–Out Letter, the Verification of Opt-Out Letter will govern.

E. GCG will maintain a list of Class Members who have excluded themselves and will provide that list to Defendants and Class Counsel upon request and will notify Defendants and Class Counsel when GCG receives an opt-out request. GCG will retain the originals of all Verification of Opt-Out Letters (including the envelopes with the postmarks) received from Class Members. GCG will send copies of all Verification of Opt Out Letters (including the envelopes with the postmarks) received from Class Members to Defendants and Class Counsel.

F. If 5% or more Class Members exclude themselves from the Settlement, then either Party may declare the agreement void any time prior to final approval of the Settlement.

G. Class Members who wish to object to this Agreement or the Settlement must file a written objection with the Court and serve copies of the filing on Class Counsel and Defendants' counsel no later than 45 days from the initial mailing date of the Notice. Objections will be deemed timely returned if they are postmarked on or before the 45th day after the initial mailing of the Notice. The time to submit an objection will not be increased for returned mailings. The objection will include the objecting party's full name, address and telephone number. The objection will state the objection to the settlement, the basis for the objection, and all documents that support the objection. Class Members who fail to make objections in the manner specified above will be deemed to have waived their ability to object to the Agreement and, therefore, will be foreclosed from making any objection (whether by subsequent objection, intervention, appeal, or otherwise) to the Agreement. Class Members who have not filed and served timely written objections may not speak at the Final Approval Hearing. If Class Counsel receives objections, Class Counsel will provide Defendants' counsel with notice of any such objections received.

H. Neither Defendant nor their legal counsel will contact any of the Class Members regarding the terms of this Settlement and/or a Class Member's participation in the Settlement. If any inquiry by a Class Member is directed at Defendants or their legal counsel, Defendants and/or their legal counsel will (1) tell the class member that they are not permitted to discuss the settlement with the class member and (2) direct the class

9

member to call GCG. If GCG cannot resolve the issue or answer the question, then GCG will direct the class member to Class Counsel.

I. Class Counsel will not initiate direct contact with any Class Member for the purpose of soliciting their participation in the Settlement. Likewise, Class Counsel will not direct others to solicit Class Members' participation in the Settlement.

6. **Dismissal of Lawsuit with Prejudice**

   A. Upon the conclusion of the Court's final approval of the Settlement and the settlement procedure outlined herein, the Parties stipulate that the Lawsuit will be dismissed with prejudice.

7. **Other Terms**

   A. No modifications or amendments to any of this Agreement's terms, conditions, or provisions may be made except by written agreement executed by all Parties. Any material changes will be subject to approval by the Court presiding over the Lawsuit.

   B. This Agreement is written jointly by the Parties and may not be construed against any one party as the drafter. If any provision(s) of this Agreement are held to be illegal, invalid, or unenforceable under present or future laws, any such provision(s) will be curtailed and limited only to the extent necessary to bring it within the requirements of the law. In that event, the remainder of this Agreement will thereafter be construed and enforced as if the illegal, invalid, or unenforceable provision(s) had never comprised a part of the Agreement. The remaining provision(s) of the Agreement will continue in full force and effect and will not be affected by any illegal, invalid, or unenforceable provision(s) or by their severance.

   C. The waiver by any party hereto of a breach of any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach of any party, nor will any waiver operate or be construed as a rescission of this Agreement. No breach of this Agreement will permit the non-breaching party to repudiate the Agreement or refuse or fail to perform any obligations required hereunder.

   D. Ohio law governs this Agreement's validity, construction, and enforceability. This Court shall retain jurisdiction to enforce the terms of this Agreement.

   E. This Agreement may be executed by facsimile and in multiple counterparts, each of which will be deemed an original, but all of which together constitute one instrument.

   F. The Parties agree to promptly take all actions reasonably necessary to effectuate this Agreement, including but not limited to motions to the Court for approval of the

      Agreement and continuance of any intervening deadlines contrary to those contemplated by the Agreement.

G. If any deadline under the Agreement falls on a Saturday, Sunday, or legal holiday, the Parties agree that the deadline will be deemed to be the next business day.

H. In the event that this Agreement is not approved, then this shall not affect the validity of the separate agreement for the settlement of certain claims asserted by named Plaintiff Chad Crumbaker.

The undersigned hereby acknowledge and agree to all of the terms, conditions, and provisions of the above settlement agreement.

_____      _____
Chad Crumbaker,      Date
Individually and as Class Representative for Plaintiff

_____      _____
     Date
On behalf of Parking Solutions, Inc.

_____      _____
Aaron Shocket, on behalf of himself      Date

_____      _____
Robert Rees, on behalf of himself      Date